PETER J. FRITZ v. E. I. duPONT de NEMOURS & Co., a corporation of the State of Delaware, and the PENNSYLVANIA RAILROAD Co., a corporation of the Commonwealth of Pennsylvania.

428

(*July* 19, 1950.)

TERRY, J., sitting.

*William E. Taylor, Jr.,* for plaintiff.

*Hugh M. Morris* and *Alexander L. Nichols* (of the firm of Morris, Steel, Nichols and Arsht) for the defendant E. I. duPont de Nemours & Co.

*David F. Anderson* (of the firm of Southerland, Berl and Potter) for the defendant The Pennsylvania Railroad Co.

Superior Court for New Castle County, No. 358, Civil Action, 1949.

TERRY, J.

This is an action of tort to recover for personal injuries alleged to have been sustained by the plaintiff at the hands of the defendants. The complaint as originally filed is as follows:

"1. Plaintiff is a resident of the City of Wilmington, State of Delaware.

"2. Defendant E. I. duPont de Nemours & Co. is a corporation of the State of Delaware, and the Defendant Pennsylvania Railroad Co. is a corporation of the Commonwealth of Pennsylvania.

"3. Plaintiff is an employee of the Defendant Pennsylvania Railroad Co.

"4. On May 3, 1948, while Plaintiff was employed by the Defendant Pennsylvania Railroad Co. and acting in the course of and in the scope of his employment with this Defendant on the property of this Defendant at the Wilmington Yard, Edgemoor, Delaware, he was overcome by a concentration of chlorine fumes which escaped in some manner unknown to the Plaintiff from the plant operated by the Defendant E. I. duPont de Nemours & Co. at Edge Moor, Delaware.

"5. The Defendant E. I. duPont de Nemours & Co. in using chlorine gas in its operations assumed a duty to the Plaintiff and to all others in handling an inherently dangerous gas to take the necessary precautions to prevent the escape of this dangerous substance in such a manner that it would become dangerous or injurious to persons coming in contact with it. This Defendant failed to fulfill this duty in that:

"(a) It failed to use ordinary care and caution in handling this chlorine gas and in restricting it to the Defendant's premises.

"(b) This Defendant failed to warn the Plaintiff and other employees of the Defendant Pennsylvania Railroad Co. and the Pennsylvania Railroad Co. that such dangerous gases were being used and might escape from the operation of the said Defendant E. I. duPont de Nemours & Co. and thereby cause serious injury to persons subjected to them.

"6. The Defendant Pennsylvania Railroad Co. in employing the Plaintiff assumed a duty to furnish him a safe place to work and to warn him of any dangers necessarily inherent to his work. This Defendant failed to fulfill these duties to the Plaintiff. in that:

"(a) It failed to use ordinary care and caution to provide the Plaintiff a safe place in which to work.

"(b) It failed to warn the Plaintiff of the dangers inherent in his employment with the Defendant.

"(c) It failed to use reasonable care and caution to discover and warn its employees of any dangers to which they would be subjected while working in its employ at the Wilmington Yards, Edge Moor, Delaware.

"7. As a result of the negligence of the Defendants as aforesaid, Plaintiff was overcome by chlorine fumes and thereby sustained severe physical injury to his person, to his nervous system, suffered severe and permanent injury to his lungs and respiratory system in general, and further suffered severe pain and mental anguish incident to this injury, and was required to expend for medical and hospital services the sum of Sixty-Five Dollars ($65.00), as shown in Exhibit A attached hereto, and was prevented from engaging in his usual employment and thereby lost wages in the amount of Six Hundred Sixty-Two Dollars and Four Cents ($662.04), as set forth more particularly in Exhibit B attached hereto, and the Defendant further now requires and will continue to require for the balance of his life medical and hospital services in an amount presently impossible to forecast adequately.

"Wherefore, Plaintiff demands judgment against either or both of the Defendants in the amount of Fifty Thousand Dollars ($50,000) with costs and interest from May 3, 1948."

Each defendant has filed a motion suggesting the complaint be dismissed, for the reason that plaintiff has failed to state a claim against it upon which relief can be granted. Rule 12, Superior Court.

A stipulation was filed, upon which an order was entered dismissing the complaint against Pennsylvania with leave to the plaintiff to amend the same within ten days after the date of the disposition of DuPont's motion.

The question presented is, Has the plaintiff stated a cause of action against DuPont?

DuPont contends that the language employed under Counts 4 and 5 of the complaint is ambiguous in that it is not clear in what respect the plaintiff predicates his claim; that is, whether he intends to proceed under the doctrine of res ipsa loquitur, the doctrine of absolute liability, or upon the theory of ordinary negligence.

DuPont says that if the plaintiff's intended course under Count 4 be the doctrine of res ipsa loquitur, then the allegations therein are not sufficient since recognized prerequisites for the application of the doctrine do not appear; that is, it nowhere appears that the causative force of the injury was under the sole control of DuPont; that there was no other equally efficient proximate cause which produced the injury, and that the injury was something out of the usual order of things.

If on the other hand the plaintiff's intention is to rely upon the doctrine of absolute liability, then Count 4 should be dismissed for the reason that the doctrine has never been recognized in this State either under our statutory or decisional law, and has been elsewhere in this country either wholly repudiated or so confined in its effect as to be without general application.

If ordinary negligence is to be relied upon by the plaintiff under Count 4, then said Count should be dismissed because the circumstances constituting the negligence complained of have not been stated with particularity under Rule 9 (b) of this Court.

DuPont suggests that Count 5 is not sufficient for the same reasons as indicated under Count 4.

The plaintiff during oral argument and upon brief takes the position that he is relying upon two independent theories of re-

covery; that is, under Count 4 he relies upon the doctrine of res ipsa loquitur and under Count 5 upon the doctrine of absolute liability. However, he says, if the allegations under said Counts are held to be insufficient or not clear concerning his stated theories of recovery, that such defects can be readily cured by amendment. Since argument he has been granted leave to file an amendment to his complaint, and, in accordance therewith, has amended Count 4 by adding a new paragraph as follows: "The aforesaid plant at Edge Moor at the time the chlorine fumes escaped was owned and in the exclusive control of the defendant, E. I. duPont de Nemours & Co. The injury to plaintiff was caused by escaped gas and no other cause intervened to bring about plaintiff's injury."

I now approach Count 4 as amended, together with Count 5, in the light of DuPont's motion and shall consider the Counts only in accordance with the plaintiff's stated course of action.

The allegations under Count 4 prior to amendment must be said to be inadequate insofar as the application of the doctrine of res ipsa loquitur is concerned. *Biddle* v. *Haldas Bros.,* 8 *W. W. Harr.* 210, 190 *A.* 588; *Delaware Coach Co.* v. *Reynolds,* 6 *Terry* 226, 71 *A.* 2d 69. However, the plaintiff by his additional allegations found in his amendment to said Count has brought himself within the application of the doctrine; thus, DuPont's motion in relation thereto must be denied.

It is apparent to me that under Count 5 the plaintiff has indicated his desire to proceed under the theory of ordinary negligence, but he says the Count is sufficient to support the application of the doctrine of absolute liability. Conceding arguendo the sufficiency thereof in the light of the doctrine, such contention thus squarely presents the question whether or not we should adopt the rule in this State as a component part of our common law.

The rule springs from the decision in the English case of *Rylands* v. *Fletcher* (1866) *L. R.* 1 *Ex.* 265. There the defendant constructed a reservoir on lands separated from the plaintiff's colliery by intervening land. Mines under both the reservoir site and the intervening land had previously been worked. The plaintiff by workings legally made in his own property and the intervening land had opened an underground communication between his colliery and these old workings. Neither of the defendants nor any of their employees who had constructed the reservoir knew that such communications existed or even that these old workings existed under the reservoir site, and the defendants were not personally guilty of any negligence. As a matter of fact there were five old shafts under the reservoir, which shafts led down into the workings. When the reservoir was undertaken to be filled the water broke through into these shafts and so poured into the plaintiff's mines.

The Court of Exchequer held the defendants liable for the resultant damage. This judgment was affirmed on appeal to the House of Lords (1868) L. R. 3 H. L. 330. Blackburn, J., in stating the rule, Page 278 of L. R. 1 Ex. 265, said, "The person who for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it at his peril, and, if he does not do so is prima facie answerable for all the damage which is the natural consequence of its escape." However, the Court stated that "a defendant can excuse himself by showing that the escape was owing to the plaintiff's default; or perhaps that the escape was the consequence of vis major, or the Act of God." This dictum was transmitted into law by the decision in *Nichols* v. *Marsland, L. R.* 10 *Ex.* 255, and the rule established that the decision in the Rylands case was inapplicable where the injury is caused by "vis major or the Act of God" which are generally regarded as interchangeable terms.

There have been limitations upon the wide sweep of this

principle even in English decisions. *Wilson v. Newberry, L. R. 7 Q. B.* 31; *Ross* v. *Feddon, L. R. 7 Q. B.* 661; *Nichols* v. *Marsland, L. R.* 10 *Ex.* 255; *S. C.* 2 *Ex. Div.* 1; *Box* v. *Jubb,* 4 *Ex. D.* 76; *Baker* v. *Snell* (1908) 2 *K. B.* 825; *Richards* v. *Lothian* (1913) *A. C.* 263, 275-282; *Noble* v. *Harrison* (1926) 2 *K. B.* 332, overruling *Gill* v. *Edouin,* 71 *L. T. Rep.* 762; *Phillips* v. *Britannia Hygienic Laundry Co., Ltd.* (1923) 1 *K. B.* 539, Affirmed in (1923) 2 *K. B.* 832; *Smith* v. *Great Western Railway,* 42 *T. L. R.* 391; *St. Annie's Well Brewery Co.* v. *Roberts,* 140 *L. T. Rep.* 1, 6; *Wilkins* v. *Leighton* (1932) 2 *Ch. D.* 106. See also *Brown* v. *Collins,* 53 *N. H.* 442, 16 *Am. Rep.* 372; *Marshall* v. *Welwood,* 9 *Vroom* 339, 38 *N. J. L.* 339, 20 *Am. Rep.* 394; *Losee* v. *Buchanan,* 51 *N. Y.* 476, 10 *Am. Rep.* 623.

The decisional law in this country regarding the application of the rule rests in utter confusion. In the case of *Losee* v. *Buchanan,* 51 N. Y. 476, 10 *Am. Rep.* 623, the Court, after reviewing the Rylands' case, stated that the law laid down therein is "in direct conflict with the law as settled in this country. Here, if one builds a dam upon his own premises and thus holds back and accummulates the water for his benefit, or if he brings water upon his premises into a reservoir in case the dams or banks of the reservoir give away and the lands of the neighbor are thus flooded, he is not liable for the damage without proof of some fault or negligence on his part." Likewise, in the case of *Pennsylvania Coal Co.* v. *Sanderson,* 113 *Pa.* 126, 6 *A.* 453, 460, 57 *Am. Rep.* 445, it is said "the doctrine declared in *Fletcher* v. *Rylands,* regarded as a general statement of the law, is perhaps not open to criticism in England, but it is subject to many and obvious exceptions there, and has not been generally received in this country. A rule which cast upon an innocent person the responsibility of an insurer is a hard one at the best, and will not be generally applied unless required by some public policy or the contract of the parties." *Burdick on the Law of Torts,* 4th *Ed., Pg.* 14, states "the rule of

*Rylands v. Fletcher,* even with its recognized limitations, finds no great favor even in England, and the American Courts have generally refused to follow it." Mr. Freeman, the Editor of American Decisions, Series of Selected Cases, says in his notes at 29, id, 149, that "the doctrine is not adopted in this country." See also *Jacoby* v. *Town of City of Gillette,* 62 *Wyo.* 487, 174 *P.* 2d 505, 177 *P.* 2d 204, 169 *A. L. R.* 502; *Bishop on Contract Law* ¶ 839; 14 *Am. L. Rev.* 1; 2 *Harper's Readings in Torts* (1941); *Wiels Water Rights* 2d *Ed.,* ¶ 163; *Fleming* v. *Lockwood,* 36 *Mont.* 384, 92 *P.* 962, 14 *L. R. A.* (*N. S.*) 628, 122 *Am. St. Rep.* 375, 13 *Ann. Cas.* 263; *Howell* v. *Big Horn Basin Colonization Co.,* 14 *Wyo.* 14, 81 *P.* 785, 1 *L. R. A.* (*N. S.*) 596; *Angell on Watercourses* ¶ 336.

There exists a class of cases here in which it is held that one who for his own purposes brings upon his land highly dangerous substances or other things which may have a tendency to escape and do great damage is bound at his peril to confine them and keep them on his own premises. But it must be kept in mind that this rule is applicable only to such unusual and extraordinary uses which are so fraught with peril to others that the owner should not be permitted to adopt them for his own purposes unless he provides safeguards whose protection he guarantees. *Ainsworth* v. *Lakin,* 180 *Mass.* 397, 62 *N. E.* 746, 57 *L. R. A.* 132, 91 *Am. St. Rep.* 314; *Restatement of the Law of Torts* ¶ 519, ¶ 520; *Harvard Law Review* 310; *Bradford Glycerine Co.* v. *St. Marys Woollen Mfg. Co.,* 60 *Ohio St.* 560, 54 *N. E.* 528, 45 *L. R. A.* 658, 71 *Am. St. Rep.* 740.

Another class of cases holds that where one brings upon his own land or uses thereon dangerous substances which causes injury to a neighbor he commits a trespass and is answerable for all damages caused, irrespective of whether the use was negligently performed. 22 *Am. Jur.* (Explosives) ¶ 53; *Mulchanock* v.

*White Hall Cement Mfg. Co.,* 253 *Pa.* 262, 98 *A.* 554, *L. R. A.* 1917A, 1015; *Rafferty* v. *Davis,* 260 *Pa.* 563, 103 *A.* 951; *Baier* v. *Glen Alden Coal Co.,* 131 *Pa. Super.* 309, 200 *A.* 190, 191.

There is a third class of cases which hold that where highly dangerous substances are kept, or stored, or used in such a manner as to constitute a nuisance, the person creating or continuing such nuisance is liable absolutely for all damages suffered in consequence thereof, irrespective of negligence or the want of ordinary care in storing, keeping or using the same. 22 *Am. Jur.* (Explosions & Explosives) ¶ 27; *Exner* v. *Sherman Power Const. Co.,* (2 *Cir.*) 54 *F. 2d* 510, 80 *A. L. R.* 692; *Judson v. Giant Powder Co.,* 107 *Cal.* 549, 40 *P.* 1020, 29 *L. R. A.* 718, 48 *Am. St. Rep.* 146; *Whaley* v. *Sloss-Sheffield Steel & Iron Co.,* 164 *Ala.* 216, 51 *So.* 419, 20 *Ann. Cas.* 827; *Heeg* v. *Licht,* 80 *N. Y.* 579, 36 *Am. Rep.* 654; *McAndrews* v. *Collerd,* 42 *N. J. L.* 189, 36 *Am. Rep.* 508; *Laflin-Rand Powder Co.* v. *Tearney,* 131 *Ill.* 322, 23 *N. E.* 389, 7 *L. R. A.* 262, 19 *Am. St. Rep.* 34, 35 *C. J. S.,* Explosives, ¶ 5.

There remains a fourth class of cases wherein the Courts have not accepted as an absolute rule any of the three theories above indicated, yet grant recovery based upon negligence evidenced by the lack of the exercise of that degree of care held to be necessary under the circumstances of each case.

The plaintiff concedes that a great majority of the Courts in this country have been reluctant to recognize directly the rule of absolute liability as laid down in the Rylands case, nevertheless, he says they have reached the identical result by the more orthodox routes of trespass, nuisance or negligence. He contends that this rejection is predicated upon the misconception that absolute liability is a form of liability without limit. He argues that it is much more practical and less confusing to face the question squarely and analyze the basic problem actually involved. He

says that fundamentally the idea that a person who intentionally exposes certain segments of society to a particular risk, a risk which cannot be reduced below a given minimum regardless of the care exercised in conducting the activity, should bear a direct and absolute responsibility for the damages resulting therefrom. Thus, if a person conducting an unusual or hazardous activity can reasonably be said to be able to foresee that certain harm can result to other persons, then part of the price for engaging in the actvity should be a correlative liability for the forseeable harm actually caused.

It is contended in the present case that the possession and use by DuPont of chlorine gas constituted such a hazardous activity that DuPont could have reasonably foreseen that certain harm would result to any person within the area of operation in the event the chlorine gas should escape; therefore DuPont should bear a direct and absolute liability for the injuries resulting to the plaintiff.

The complaint does not state the purpose or use of the chlorine gas by DuPont. It is merely alleged that DuPont used it in its operation. During oral argument plaintiff's counsel took the position that the Edge Moor plant of DuPont is a plant where certain paints are manufactured, and that chlorine gas is used in the chemical process which produces the paint material and it was this gas as used in this process which escaped from DuPont's premises and caused the plaintiff's injury.

In the present case it was not unlawful for DuPont to have on its premises chlorine gas, nor was its presence there unusual, and it cannot be said that the mere possession of chlorine gas by DuPont without more was dangerous per se in the light of recognized industrial use. To say that any corporation or individual possessing or using dangerous substances upon its or his premises should be held liable as an insurer in the event of injury to

others by reason of the mere possession, use, or escape thereof would be but to strangle corporate and individual enterprise in many well recognized fields of endeavor. If the rule of absolute liability is to be adopted in this State, it seems to me that its application should be confined to those operations which have connected with them a history of doing injury to others or the destruction of their property, and only in those cases where a nuisance by reason of their presence or use can be established.

▮ The complaint in the present case is wanting insofar as any allegations from which the maintenance of a nuisance can be inferred, and even though the contentions as indicated by the plaintiff as to the use be in the recitals my determination would be the same; that is, the mere use of chlorine gas by DuPont and its escape thereby injuring the plaintiff without more would not be, in the absence of negligence, enough upon which to base a recovery.

*DuPont's motion to dismiss Count 5 of the complaint is granted.*

Note: I suggest, although not called upon to determine, that the allegations contained in Count 5 are not sufficient under Rule 9 (b) of this Court to support a recovery based upon negligence. "9 (b) in all averments of fraud, or negligence, the circumstances constituting fraud or negligence shall be stated with particularity. * * *"