378 So.2d 953 (1979)
James D. RAPATTONI, Plaintiff and Appellant,
v.
COMMERCIAL UNION ASSURANCE COMPANY et al., Defendants and Appellees.
No. 7104.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Rehearing Denied November 21, 1979.
*954 Gamm, Greenberg & Kaplan, Irving M. Greenberg and Jack H. Kaplan, Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancy & King, Herschel E. Richard, Jr., and Charles G. Tutt, Shreveport, for intervenor-appellant.
Trimble, Randow, Smith & Wilson, James T. Trimble, Jr., Alexandria, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
*955 CULPEPPER, Judge.
Plaintiff, James D. Rapattoni, seeks damages for personal injuries. On December 30, 1974, while working at the Hot Wells Health Resort, a marble slab fell on plaintiff's right foot. Named as defendants are: (1) The State of Louisiana, (2) The Louisiana Tourist Development Commission, and (3) Commercial Union Assurance Company, liability insurer of the Resort. From a judgment dismissing his suit, plaintiff appealed.
The issues on appeal are: (1) Was plaintiff a statutory employee of the Commission? (2) Was plaintiff a "borrowed employee" of the Commission? (3) Are defendants liable under the rule of strict liability? (4) Are defendants liable under LSA-C.C. Article 2322, which provides for liability for damages caused by the ruin of a building due to neglect or failure to repair? (5) Are defendants liable under the general negligence rules of LSA-C.C. Article 2315? (6) Was plaintiff contributorily negligent, barring his recovery?
There is little dispute as to the essential facts. The Hot Wells Health Resort is owned by the State of Louisiana and is operated by the Louisiana Tourist Development Commission, a State agency. The men's bathhouse of the Resort includes a room in which there are a number of tubs which are separated by marble slab partitions. The floor is terrazzo. The bathhouse, including the terrazzo floor, was built in about 1947-48.
In 1975, the Tourist Commission entered into a contract with United Tile Company, Inc. to refinish and repair the terrazzo floor in the bathhouse. The pertinent portions of the contract read as follows:
"To furnish all labor, materials, tools and equipment necessary to rework the terrazo floor of the Men's Bathhouse located at Hotwells Health Resort, Rt. 1, Boyce, Louisiana in strict accordance with specifications and special conditions outlined herein.
"Contractor to fine grind surface of terrazo floor, reseal with Hilliard's Onyx 2, to buff, and refill or point up any holes in floor.
"The price agreed upon for the job was $1,900.00."
Plaintiff was the foreman of a three-man crew sent by United Tile Company to perform the contract. On the day of the accident, three of the five full-time maintenance employees of the Resort were removing the marble slab partitions and the tubs so that plaintiff and his crew could refinish and repair the terrazzo floor. The Resort employees had already removed several of the marble slabs, and plaintiff and his helpers had started grinding the floor, when the Resort employees encountered difficulty in removing one of the marble partitions. The foreman of the Resort crew asked plaintiff to assist in removing this marble slab. Plaintiff walked over to assist, and it was while this slab was being removed that the accident occurred.
The marble slab was about four feet high and seven feet long. It was about 18 inches above the floor and was supported by metal rods with U-bolts on top, into which the slab fitted. One-quarter inch bolts and nuts held the slab in the U-bolts. The slab was held in place at the top by similar U-bolts, which were attached to an ornamental railing which extended across the room.
The procedure being used by the Resort employees to remove the slabs was to unscrew the nuts from the quarter-inch bolts, then tap the bolts back through the slab and pull the bolts out with either a wrench or a claw hammer. After all of the quarter-inch bolts were removed, the slabs, which weighed over 200 pounds, were lifted by two or three men and placed on the floor.
The slab which plaintiff was asked to assist in removing was larger and heavier than the others. The Resort employees said they wanted plaintiff to help hold the slab in place on the U-bolts, after the quarter-inch bolts had been removed, to keep the slab from tilting and falling over. Plaintiff testified that when he walked over to assist, he placed one hand on top of the slab and *956 another on the end next to the aisle and was simply holding the slab when it fell and struck his right foot. As we understand the record, plaintiff was on one side of the slab and two Resort employees were on the other side.
There is some conflict in the testimony of the two Resort employees as to exactly what happened at the time the slab fell. Frank Watkins testified he was removing a bolt from a "T-clamp" attached to the ornamental bar at the top when the slab suddenly fell. Henry Peterson, the other Resort employee, testified that he was removing a bolt at the bottom of the slab by pulling on it with a claw hammer, and that when the bolt came out the slab fell.
The plaintiff and his witness, Thomas Randolph, who was one of his helpers, testified that Watkins tapped on the slab with a hammer, causing it to fall.
In a written opinion, the district judge found as a fact that the marble slab broke before it hit the floor, but he found the evidence insufficient to prove what caused the slab to break and fall.
STATUTORY EMPLOYEE ISSUE
The first issue is whether Rapattoni was a statutory employee under the provisions of LSA-R.S. 23:1061 which read as follows:
"§ 1061. Principal contractors; liability
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him;"
If plaintiff was a statutory employee, his exclusive remedy against the State and the Commission is for workmen's compensation benefits, and he is barred from pursuing the present action in tort. LSA-R.S. 23:1032.
Jurisprudence states that the purpose of the so-called "Section 6" provision is to prevent an employer from evading his liability for workmen's compensation benefits through the use of an intermediary independent contractor. Jones v. Southern Tupelo Lumber Company, 257 La. 869, 244 So.2d 815 (1971).
The district judge recognized there are cases which hold the ordinary maintenance and repair of existing buildings and equipment is a part of the trade, business or occupation of the principal, and that the principal cannot avoid liability for workmen's compensation benefits by engaging independent contractors to perform this type of work. See Jones v. Francis Romero, Inc., 345 So.2d 1286 (3rd Cir. 1977) and the cases discussed therein.
However, the district judge distinguished these ordinary maintenance and repair cases from the present case on the following basis:
"The work done by United Tile was not the typical maintenance work done by the resort's employees. The terrazo floor was put in place about 1947 and was not reworked until United Tile employees began the task on December 30, 1974. The job took special knowledge and skill which the resort maintenance crew did not possess. It also required tools which the resort did not own. This was not ordinary maintenance regularly done by employees of the Hot Wells Resort, but special renovation. See also Moak v. Link-Belt Company, 229 So.2d 395 (4th Cir. 1969).
This Court finds the following words of the Supreme Court in the case of Horrell v. Gulf Valley Cotton Oil Company, Inc., 131 So. 709, 712 (La.1930) particularly helpful: "The record shows that the particular kind of brickwork which was being done required specialists, and that the regular employees of defendant did not engage in that kind of special work." That Court found the plaintiff was not a statutory employee and could not recover workmen's compensation from the principal employer.
*957 In the more recent Supreme Court case of Reeves v. Louisiana and Arkansas Railway Company, 282 So.2d 503 (La.1973), the Court stated that the test was whether the work plaintiff was engaged in was customarily done by the principal employer or other employers similarly situated. Finding that it was not, the Court held the principal was not a statutory employer. See also Brown v. Kaiser Aluminum and Chemical Corporation, 289 So.2d 524 (1st Cir. 1974).
The Court finds that the defendants have failed to prove by the preponderance of the evidence that reworking the terrazo floor was part of the maintenance and repair which the resort's employees normally would perform. It required special skills and equipment. It had not been done since the late 1940's when the bathhouse was built. Reworking the terrazo floor in the men's bathhouse was not part of the trade, business or occupation of the Hot Wells Health Resort."
The recent case of Lushute v. Diesi, 354 So.2d 179 (La.1978) provides some understanding of our Supreme Court's present view on the issue in question. Lushute was an independent contractor who performed manual labor in carrying out his contract with Diesi to repair the air conditioning system in Diesi's Restaurant, which was known as "Little Capitol". The court held:
"Under the facts of this case, we do not consider that the work performed by Lushute in repairing the air-conditioning system at the restaurant owned by Little Capitol was a part of Little Capitol's trade, business or occupation. A properly functioning air-conditioning system, although desirable from the viewpoint of customer comfort and satisfaction, is not necessary for the operation of a restaurant. The service rendered by decedent at the time of the accident was not a part of the restaurant business but was merely incidental thereto."
In his dissent in Lushute, Associate Justice Calogero took the position that an independent contractor who performs manual labor should be treated the same as a direct employee:, i. e., he should be required to prove only that the work which he was performing was incidental to his employment, without regard to whether the work was part of the trade, business or occupation of the principal. However, Justice Calogero appears to agree with the majority that the work being done by Lushute was not a part of the trade, business or occupation of the restaurant.
Of course, Lushute was the independent contractor himself and not, as in the present case, an employee of the independent contractor. Nevertheless, the test as to whether the work being performed is part of the trade, business or occupation of the principal is the same, under the majority opinion, for both the independent contractor doing manual labor and the independent contractor's employees.
It appears that in Lushute our Supreme Court may have been following the policy considerations suggested in Malone, Louisiana Workmen's Compensation Law and Practice, Section 125 at pages 155-156:
"A final observation seems appropriate here. It has been noted earlier that an employee cannot recover from his direct employer unless he was hired to do work which is a part of the latter's regular business. 69 Similarly, we see that Section six does not apply unless the work of the contractor is part of the principal's regular trade or business. The question thus arises as to whether the scope of the business is to be determined by the same criteria in answering both inquiries. It is believed that when the court is determining whether a direct employee is engaged in the regular course of the business of his employer it will be justified in manifesting a more liberal attitude than when liability under Section six is in question. On final analysis each enterpriser should have a fairly free hand in determining the scope of the routine work he wishes to undertake in his business, and the practices he adopts are of some importance in this respect. If he chooses to put his own employee to a task which might be done through contractors in other similar enterprises, he has thus afforded *958 some indication that he is willing to treat this work as a part of his own business.70 The frequency of the need for the particular work in question and the fact that the direct employee was a member of his regular crew, rather than an expert employed specially for the occasion, will be important here."
Under the authorities discussed above, we conclude that in the present case the district judge correctly held Rapattoni was not a statutory employee of the Louisiana Tourist Development Commission.
BORROWED SERVANT
In his well considered written reasons, the district judge has correctly decided this issue as follows:
"There are two general tests for the borrowed servant doctrine: (1) whose work was being performed and (2) who had control of the employee (plaintiff). Young v. Hearin Tank Lines, Inc., 176 So.2d 790 (3rd Cir. 1965); Benoit v. Hunt Tool Company, 53 So.2d 137 (La.1951). As the Supreme Court pointed out in Benoit, supra, these tests are not infallible. Since Spanja and Dixon were rendered, the jurisprudence has rather consistently looked more closely at who had the control of the employee when he was injured rather than at whose work he was engaged in. See Dupre v. Sterling Glass and Paint Company, Inc., 344 So.2d 1060 (1st Cir. 1977)."

* * * * * *
"There is also a question of whether a common laborer can create employment on his master's behalf. Professor Malone discusses that issue at Page 59 of his treatise.
There can be no recovery in workmen's compensation unless there is a proven employer-employee relationship. This Court finds that the evidence presented does not support a finding that Rapattoni was an employee of the Hot Wells Health Resort. The evidence suggests that Rapattoni voluntarily went to the aid of the resort's maintenance crew when the foreman called for his assistance. It was not the intention of anyone at the scene that Rapattoni was to be considered an employee of the resort.
The only control the defendants had over Rapattoni was mere suggestion as to how he might hold the slab while the last bolt was removed. These facts do not bring Rapattoni within the framework of the borrowed employee doctrine."
STRICT LIABILITY UNDER CIVIL CODE ARTICLE 2317
The district judge correctly concluded there is no liability under LSA-C.C. Article 2317, as construed in Loescher v. Parr, 324 So.2d 441 (La.1975), for the reason that in the present case the evidence does not prove a defect in the marble slab caused it to break and fall. The district judge stated that plaintiff simply failed to prove by a preponderance of the evidence that there was a defect in the slab. The trial judge was not clearly wrong in this finding of fact.
LIABILITY UNDER CIVIL CODE ARTICLE 2322
The next issue is whether defendants are liable under LSA-C.C. Article 2322 which reads as follows:
"Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
The district judge found this code article inapplicable for the same reason that he found the rule of strict liability inapplicable, i. e., that plaintiff failed to sustain his burden of proving a defect in the slab caused it to break and fall. We do not find the trial judge clearly wrong in this conclusion. Additionally, the district judge correctly relied on cases which hold that Article 2322 is inapplicable where the fall of the portion of the building in question occurs during demolition work. Matthews v. Southern Amusement Company, Inc., 199 So.2d 403 (3rd Cir. 1967); Temple v. General Insurance Company of America, 306 So.2d 915 (1st Cir. 1975).
LIABILITY UNDER CIVIL CODE ARTICLE 2315
In urging liability under our general tort law, Civil Code Article 2315, plaintiff *959 first argues the rule of res ipsa loquitur is applicable. The district judge correctly concluded this doctrine is not applicable because, at the time of the accident, the marble slab was not under the exclusive control of the Resort employees. Under plaintiff's own testimony, he was holding the piece of marble on the top and on the side at the time it fell. An essential element of the presumption of negligence under res ipsa loquitur is that the injury-causing instrumentality be under the exclusive control of the defendant. Alexander v. St. Paul Fire & Marine Insurance Company, 312 So.2d 139 (1st Cir. 1975).
Plaintiff argues that even if res ipsa loquitur is not applicable, the evidence shows that the marble slab broke and fell either because of the actions of Watkins or of Peterson or of both at the time they removed the last bolt. Plaintiff says that it must have been some kind of pressure on the slab exerted by Watkins or Peterson which caused it to break. This is a persuasive argument, but the trial judge refused to accept it. He was apparently impressed by the testimony of Watkins and of Peterson that they were not tapping on the bolt or on the slab at the time it fell, and that they did not break the slab when they pulled out the last bolt. Under the Rules of Appellate Review, we do not find that the trial judge was clearly wrong in his finding of fact that plaintiff failed to prove by a preponderance of the evidence that Watkins or Peterson negligently broke the slab.
CONTRIBUTORY NEGLIGENCE
Even assuming that Watkins or Peterson negligently broke the slab when they pulled out the last bolt, we think the trial judge correctly found plaintiff's recovery is barred by his own contributory negligence. The evidence shows that Mr. Rapatonni had many years of experience in construction work, particularly with bricks, terrazzo and tile. While the Resort crew was removing the previous marble slab partitions, plaintiff recognized the danger that a slab might fall on someone's foot. He actually suggested to the Hot Wells employees that they place wooden blocks under the slab while they were removing the bolts. Despite this actual knowledge of the hazard which caused his injury, plaintiff had his foot under the marble slab at the time the final bolts were being removed, and he knew, or should have known, that there were no wooden blocks on the floor to prevent the slab from striking his foot if it fell.
The trial judge held these factual circumstances constituted contributory negligence on the part of the plaintiff. The district judge was not clearly wrong in this factual finding.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.