Benny F. O'NEAL, Plaintiff-Appellant,

v.

INTERNATIONAL PAPER CO., Defendant-Third Party Plaintiff-Appellee,

v.

Cleveland Wrecking Co. and Liberty Mutual Insurance Co., Third Party Defendants-Appellants.

No. 83–4125
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1983.

Donald G. Cave, Baton Rouge, La., for O'Neal.

Walter O. Hunter, Jr., Shreveport, La., for Cleveland and Liberty.

G.M. Bodenheimer, Shreveport, La., for Intern. Paper Co.

Before BROWN, TATE and HIGGIN-BOTHAM, Circuit Judges.

PER CURIAM:

Benny O'Neal, an employee of Cleveland Wrecking Co., was injured September 9, 1980, when some metal pipes fell on him while he was using a cutting torch inside a boiler owned by International Paper Co. He brought this diversity action against International Paper, which filed a third-party complaint against Cleveland Wrecking asserting a right to indemnity. After a bench trial, the district court dismissed O'Neal's claims and ordered Cleveland Wrecking to indemnify International Paper for its costs and expenses of defending the suit. O'Neal and Cleveland Wrecking now appeal. We affirm the thoughtfully rendered judgment of the district court.

International Paper hired Cleveland Wrecking to demolish a papermaking plant it owned in Springhill, Louisiana. Part of the plant to be demolished was a ninety-foot high recovery boiler. Cleveland Wrecker's employees first used dynamite to topple it, and then assigned O'Neal to cut up one of the remaining sections with a cutting torch so that the remnants could be hauled away for scrap metal.

O'Neal was initially told by his supervisor to go inside the boiler section and start cutting the pipes at the top, which would then be lifted out by a crane. After lunch break, because the crane was unavailable, O'Neal was told instead to cut the pipes from the bottom. O'Neal did so, allegedly over his own protests. While he was working his way up the layers of pipe, a wall of the boiler shifted and some of the pipes fell on him, causing the injuries that are the subject of this lawsuit.

O'Neal proceeded against International Paper on several theories—(1) negligence; (2) strict liability for ultrahazardous activity; (3) strict liability for a defective "thing" under La.Civ.Code art. 2317;[1] and

---

1. La.Civ.Code art. 2317 provides in part: "We are responsible, not only for the damage occa-sioned by our own act, but for that which is caused by the act of persons for whom we are

(4) strict liability for a defective building under La.Civ.Code art. 2322.[2] After a trial, the district court found that Cleveland Wrecking was an independent contractor and that International Paper had not been negligent in its selection of a contractor and had given no instructions for the demolition of the boiler. The trial court also concluded that demolition was not an ultrahazardous activity under Louisiana law except insofar as it involved blasting. Finally, the court found that O'Neal's injuries had not been caused by any defect in the boiler but rather by the way in which the job was done. For this reason, it absolved International Paper of any liability under La.Civ.Code arts. 2317 and 2322.

An indemnification clause in the contract between Cleveland Wrecking and International Paper provided:

The Contractor agrees to indemnify and save harmless the Owner for and from all claims, demands, payments, suits, actions, recoveries and judgments of whatsoever nature, kind and description, brought, recovered or exacted against the Owner for, or on account of, an injury ... or damage received or sustained by any person by reason of any act or omission of the Contractor or any subcontractor, arising out of the performance of this contract or in an incident to the construction of the Work or by or in consequence of any negligence or carelessness in guarding the Work, or on account of the injury to or death of the person, or damage to the property, of the Contractor or any subcontractor, or any agent or employee of the Contractor or any subcontractor, or any agent or employee of the Contractor or any subcontractor who shall be engaged in or about the work.

answerable, or of the things which we have in our custody."

**2.** La.Civ.Code art. 2322 provides: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction." O'Neal also asserted that International Paper was liable under La.Civ.Code art. 660 (formerly art. 670).

The Contractor agrees to defend all such actions at his own expense, to pay all charges of attorney fees and court costs and all other expenses of every kind and character and, in the event that judgment is rendered against the Owner in any such action, to satisfy the same....

The district court read this clause as requiring Cleveland Wrecking to reimburse International Paper for its costs and expenses of defending against O'Neal's claims. While conceding that under Louisiana law a party may not be able to obtain indemnification for losses caused by its own negligence unless that purpose is made very clear in the indemnification agreement, the district court noted that these costs and expenses had not been incurred as a result of International Paper's negligence; rather, the outcome of the lawsuit was that International Paper had not been negligent.

On appeal O'Neal urges (1) that the demolition of the boiler was an ultrahazardous activity and (2) that the district court erred in holding La.Civ.Code arts. 2317 and 2322 inapplicable to the demolition of a building. In its appeal Cleveland Wrecking argues that the indemnification clause does not require it to defend actions based on International Paper's strict liability or negligence. We turn to these contentions.

Although O'Neal argues that the district court "clearly erred" in determining that the activity carried on by Cleveland Wrecking was not ultrahazardous, our precedents seem to indicate that the question is one of law. *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293, 1308 (5th Cir.1982) (applying Louisiana law). Of course when an independent contractor is hired to perform an ultrahazardous activity, the duty is considered nondele-

This article, however, is considered a reiteration of art. 2322, except as to the persons who may bring suit. *Davis v. Royal-Globe Insurance Cos.*, 257 La. 523, 242 So.2d 839, 842 (1970), *cert. denied*, 403 U.S. 911, 91 S.Ct. 2208, 29 L.Ed.2d 688 (1971). Finally, O'Neal claimed La.Civ.Code art. 667 as an additional basis for liability. This article, however, simply recasts the liability for ultrahazardous activity.

gable and the principal (in this case International Paper) may be held liable regardless of the absence of an employer-employee relationship.

■ In *Kent v. Gulf States Utilities Co.,* 418 So.2d 493 (La.1982), the Louisiana Supreme Court recently analyzed the elements of ultrahazardous activity liability. The court reasoned:

> The activity of driving piles, for example, is likely to cause damage, even when there is no substandard conduct on *anyone's* part. The activity, by its very nature, simply cannot be done without a high degree of risk of injury.

> On the other hand, the transmission of electricity over isolated high tension power lines is an everyday occurrence in every parish in this state and can be done without a high degree of risk of injury. And when the activity results in injury, it is almost always because of substandard conduct on the part of either the utility, the victim or a third party.

*Id.* at 498–99. Central to the concept of ultrahazardous activity, in other words, is that there be a risk of harm that cannot be eliminated through the exercise of due care. *Id. See also Ashland Oil, Inc. v. Miller Oil Purchasing Co.,* 678 F.2d at 1307–08; Restatement (Second) of Torts § 520 (1977).

■ Here, as in *Ewell v. Petro Processors of Louisiana, Inc.,* 364 So.2d 604, 607 (La. App.1978) *writ denied,* 366 So.2d 575 (La. 1979) (finding no ultrahazardous activity), "[t]he record does not support the conclusion that the work ... cannot be done safely." Indeed, the district court specifically found that the accident could have been avoided had a crane been used to hoist the pipes out of the recovery boiler section. O'Neal maintains that this finding is clearly erroneous, but we disagree. The testimony of both O'Neal and his supervisor supports the trial judge's finding. O'Neal testified that he initially resisted his supervisor's instructions to cut the pipes from the bottom because he thought this was a dangerous method; the supervisor testified that the accident would not have occurred if the "crane and sling" device had been used. In sum, if dumping toxic chemicals in waste pits is not an ultrahazardous activity, *see Ewell v. Petro Processors of Louisiana, Inc.,* 364 So.2d at 607, we do not believe that cutting up a dilapidated boiler with a blow torch is one, either.

O'Neal also challenges the trial judge's ruling that La.Civ.Code arts. 2317 and 2322 are inapplicable to the demolition of a building. In *Rapattoni v. Commercial Union Assurance Co.,* 378 So.2d 953 (La.App. 1979), the court stated that "Article 2322 is inapplicable where the fall of the portion of the building in question occurs during demolition work." *Id.* at 958. However, O'Neal points out that more recent Louisiana cases have allowed a construction worker, *Fonseca v. Marlin Marine Corp.,* 410 So.2d 674 (La.1981), and a repairman, *Mason v. Liberty Mutual Insurance Co.,* 423 So.2d 736 (La.App.1982), to proceed under arts. 2317 and 2322. O'Neal therefore argues that a demolition worker ought to be able to recover under arts. 2317 and 2322.

■ To recover under art. 2317 or art. 2322, however, there must be a *defect.* Thus, in *Stine v. Creel,* 417 So.2d 1243 (La. App.1982), *writ denied,* 422 So.2d 163 (La. 1982), the court absolved a building owner of liability under arts. 2317 and 2322 where a repairman had fallen through the building roof, reasoning, "[I]t was not the roof that caused the injury—it was the manner about which Stine sought to remove it that caused the injury." *Id.* at 1246. The district court here expressly found that O'Neal's injuries resulted from the method used to cut apart the boiler, not from a defect in the boiler or its components. This finding is not clearly erroneous and by itself is sufficient to exonerate International Paper of any liability under arts. 2317 and 2322. *See also Oliver v. Aminoil, U.S.A., Inc.,* 662 F.2d 349, 352 (5th Cir.1981) (OCSLA case applying Louisiana law).

■ Cleveland Wrecking's sole contention on appeal is that the indemnity clause does not require it to pay for International Paper's defense when the claims against International Paper are based on negligence

or strict liability, regardless of their success. The clause contains no such limiting language, but rather obligates Cleveland Wrecking to defend all actions "arising out of the performance of this Contract ..." In *Stephens v. Chevron Oil Co.,* 517 F.2d 1123 (5th Cir.1975) (OCSLA case applying Louisiana law), we interpreted a similar provision as requiring the contractor to pay Chevron's costs and expenses where Chevron had been charged with, but found free from, negligence. We there stated:

> The indemnity agreement protects against loss from *claims* made by the contractor's employees, whether those claims are valid or not, and without regard to any fault on the part of Axelson, the indemnitor. The reason for the exclusion from indemnification of losses resulting from the indemnitee's negligence is that normally one cannot recover for losses which it has caused through its own acts of negligence. In this case Chevron's negligence has not caused the loss. The loss was caused because Axelson's employee pressed an invalid legal claim. There is no sound reason why Chevron, who has committed no fault, must incur the cost of defending against this invalid claim, simply because the invalidity resulted from a lack of negligence on the part of Chevron. In the total absence of Chevron's negligence, the manifest intention of the parties was that Axelson would defend and indemnify Chevron against any work-connected claims.

*Id.* at 1126 (emphasis in original). We do not here, as we did not in *Stephens,* confront the question of whether indemnification could have been obtained had the indemnitee been found negligent. *Cf. Smith v. Chevron Oil Co.,* 517 F.2d 1154, 1157–58 (5th Cir.1975) (OCSLA case applying Louisiana law). International Paper has not been found negligent, and the plain language of the indemnity clause requires Cleveland Wrecking to compensate it.

For the foregoing reasons, we affirm the judgment of the district court and remand for a determination of the fees and costs to be awarded International Paper under the indemnity agreement for this appeal.

AFFIRMED and REMANDED.