967 F.2d 1105
 AVEMCO INSURANCE COMPANY, INCORPORATED; Plaintiff-Appellant,
Safeco General Insurance Company of America, Incorporated;
Comav Insurance Company, Plaintiffs,
v.
ROOTO CORPORATION; Roy A. Cavanaugh, Defendants-Appellees.
 No. 91-1651.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 26, 1992.
Decided June 25, 1992.
 
 John Scott Hoff, Brandt R. Madsen (argued and briefed), Law Offices of John Scott Hoff, PC, Chicago, Ill., for plaintiff-appellant and plaintiffs.
 Thomas J. Kizer (argued and briefed), Howell, Mich., for defendants-appellees.
 Before: NELSON and BOGGS, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Avemco Insurance Company, Incorporated ("Avemco") and Safeco General Insurance Company of America, Incorporated ("Safeco"), the latter through a subsidiary, Comav Insurance Company ("Comav"), after having paid substantial sums to their insureds for damages to airplanes located at the Livingston County, Michigan, Airport, sued defendant, Rooto Corporation ("Rooto"), in the district court for reimbursement for these payments. The plaintiffs claimed that hydrochloric and sulfuric acid fumes that were released from Rooto's plant on June 14, 1987, caused the damages in controversy.[1] The parties agree that these acid fumes, in the form of a vapor cloud or mist, formed after one of Rooto's disgruntled former employees, Roy Cavanaugh ("Cavanaugh"), unlawfully entered Rooto's premises and intentionally opened certain storage tanks of acid. Cavanaugh, by his unauthorized conduct during early morning, non-business hours, caused the spill of 6,000 gallons of acid. After the incident, Rooto reported Cavanaugh's actions to the police and charged him with criminal conduct.[2]
 
 
 2
 Both parties sought summary judgment in light of substantially uncontroverted facts. Plaintiffs contended that Rooto should be held liable for some $92,000, along with Cavanaugh, for "releasing dangerous chemical substances" based upon legal theories of negligence, "conversion," and "trespass." Plaintiffs also asserted claims based on "negligent precautionary measures," "negligent hiring and supervision," and strict liability.[3]
 
 
 3
 We recite the brief factual setting and position statements described by the district court:
 
 
 4
 The operation of the defendant's business requires the holding of hydrochloric acid in large vats on its premises. The plaintiff insured several airplanes that sat on the airfield across the highway from the defendant's facility. Allegedly, clouds of acid mist are released each time the defendant's vats are filled, and these clouds allegedly have floated across the highway, and damaged the insured airplanes. On June 14, 1987, a disgruntled Rooto employee, Ray Cavanaugh, broke into the defendant's facility and opened four of the vats to release the acid so that it ran through the facility and out into the air. A large cloud of acid mist floated across to the airfield and several of the airplanes had to be scrapped. The plaintiff seeks to recover its costs from the defendant under negligence and strict liability theories. The defendant argues that the intervening criminal act prevents it from being held liable for any damages resulting from the acid released by its employee, and that there is no genuine issue of fact to sustain the plaintiff's claim that the occasional emissions of acid mist coinciding with the refilling of the vats caused any damage to the airplanes.
 
 
 5
 After a discussion of Michigan law, the district court concluded that "Michigan law does not require a landowner, occupier like the defendant here to anticipate and protect against the intervening criminal acts of third parties." Based on this conclusion, the district court granted defendant's summary judgment motion with respect to the plaintiffs' claims of negligence based on lack of security and lack of precautions on the part of Rooto. At the same time, the district court held that summary judgment was not appropriate as to alleged "negligent emissions which occurred during the [periodic] refilling of [Rooto's] tanks."
 
 
 6
 The district court discussed the issue of strict liability in its interpretation of Michigan law on the "ultrahazardous activity" doctrine. The plaintiffs cited Williams v. Detroit Edison Co., 63 Mich.App. 559, 234 N.W.2d 702 (1975), in support of their assertion that Rooto's chemical operations should be deemed an ultrahazardous activity. The court construed Williams as holding simply that "the maintenance of power lines was not an ultrahazardous activity.... [T]he Michigan court [ ] hardly [applied] strict liability to the use or storage of acid or chemicals." It then considered § 520 of the Restatement (Second) of Torts and the factors listed in that authority on the question of the application of strict liability to operations of the Rooto type. The district court concluded that "there is little risk presented by the chemical tanks on its property." It also found that "the risk of that harm was capable of elimination by the exercise of reasonable care."[4] The district court concluded that defendant's summary judgment motion should, therefore, be granted with respect to the strict liability issue. In summary, the district court concluded that "there is no theory under which the defendant can be held liable for damages resulting from the June 14, 1987 spill."
 
 
 7
 Summary judgment is an integral part of the Federal Rules of Civil Procedure. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55, 91 L.Ed.2d 265 (1986). This court reviews the grant of a summary judgment motion de novo. McAdoo v. Dallas, 932 F.2d 522, 523 (6th Cir.1991). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is not a genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (1988) (quoting Fed.R.Civ.P. 56(c)). In reviewing a motion for summary judgment, this court views the evidence "in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 I. INTERVENING CRIMINAL ACT
 
 8
 Cavanaugh's activity was an intentional, deliberate, unanticipated criminal action designed to harm Rooto. Cavanaugh's conduct was not merely negligent. Avemco argues that Cavanaugh's intervening conduct should not excuse Rooto from liability. We find the cases relied on by Avemco to be irrelevant. Neither McMillian v. Vliet, 422 Mich. 570, 374 N.W.2d 679 (1985), nor Brisboy v. Fibreboard Corp., 429 Mich. 540, 418 N.W.2d 650 (1988), involve intervening criminal conduct by a third party. We find no error in the district court's conclusion that Cavanaugh's actions on June 14, 1987, are clearly the sole proximate cause of the damages claimed based on Avemco's claims of negligence against Rooto.
 
 
 9
 The district court also found that it was not reasonably foreseeable by Rooto that its former employee, Cavanaugh, would break and enter upon its premises and do thousands of dollars in damages to its property and at the same time cause damages to airplanes situated a considerable distance away (and across a highway) from the Rooto plant. Despite the district court's finding that they had not presented reports of previous violations, Avemco argues that Rooto had been investigated for acid smells, acid emissions, and other complaints by the Michigan Department of Natural Resources. It alleged that Rooto filled its acid storage tanks more than the permitted number of times during preceding years, and that Rooto was guilty of poor housekeeping practices over the years. These arguments, however, do not support a claim for damages that resulted from the June 14, 1987 incident. Avemco may pursue claims concerning alleged negligent omissions during the filling of Rooto's tanks prior to June 14, but these prior alleged practices form no basis for negligence liability for the Cavanaugh episode.[5] Because Cavanaugh's conduct was a superseding, unforeseeable, intervening cause of the Avemco's damage, Avemco cannot recover under a negligence theory for damages resulting from that conduct.[6] See Gouch v. Grand Trunk Western Railroad, 187 Mich.App. 413, 468 N.W.2d 68 (1991); Williams v. Cunningham Drug Stores, 429 Mich. 495, 418 N.W.2d 381 (1988).
 
 II. ULTRAHAZARDOUS ACTIVITY
 
 10
 Neither party has cited any Michigan law, nor any Sixth Circuit precedent, dealing with damage caused by "drifting chemicals," as described by Avemco, or by a chemical cloud or mist causing damages to adjacent personal property. Avemco argues that the damage was caused by reason of "non-natural use" of Rooto's property by storing chemicals, which chemicals they claim are ultrahazardous by nature. Avemco maintains that Michigan has recognized the doctrine of strict liability for such "non-natural use" as it applies to "abnormally dangerous activities." Williams v. Detroit Edison Co., 63 Mich.App. 559, 234 N.W.2d 702, 708 (1975), discussed this "abnormally dangerous" or "ultrahazardous" activity doctrine and "the famous English case, Rylands v. Fletcher, 3 H & C 774, 159 Eng.Rep. 737 (1865), rev'd, LR 1 Ex. 265 (1866), aff'd, LR 3 HL 330 (1868)." Rylands held that a landowner was absolutely liable for damages resulting from the non-natural use of his land.[7] See also White v. McLouth Steel Corp., 18 Mich.App. 688, 171 N.W.2d 662 (1969) (referring to an "inherent danger" in connection with blasting work).
 
 
 11
 Few cases address the ultrahazardous activity doctrine in the present context. The court in Williams discussed Luthringer v. Moore, 31 Cal.2d 489, 190 P.2d 1 (1948), which applied strict liability based on the ultrahazardous activity doctrine in connection with the use of hydrocyanic acid gas, a deadly chemical, in fumigating a small shop to exterminate vermin. Also, the court in Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 549 (5th Cir.1987), found that a drilling operation was not an ultrahazardous operation as a matter of law. The court stated in dicta that one of the categories of "ultrahazardous activity" was the "storage of toxic gas." The Ainsworth court held that the determination of whether an activity was "ultrahazardous" in Louisiana was a "question of law," but added that such determination was "limited to those activities which present a risk of harm that cannot be eliminated through the exercise of due care." Id. at 550 (quoting O'Neal v. Int'l Paper Co., 715 F.2d 199, 202 (5th Cir.1983)); see also Hawkins v. Evans Cooperage Co., Inc., 766 F.2d 904, 907 (5th Cir.1985). Under certain language in O'Neal, the case relied upon in Ainsworth, it seems clear that through the exercise of reasonable care, until Cavanaugh's criminal action, Rooto had conducted its storage operations in such a way that harm to other parties had been eliminated. O'Neal cited the Restatement (Second) of Torts § 520 (1977), 715 F.2d at 202, for this "central concept" of ultrahazardous activity (whether risk could be eliminated by use of due care), and concluded, as a matter of law, that the demolition of a building and the use of a ninety-foot high boiler was not an ultrahazardous activity.
 
 
 12
 As in O'Neal, the district court in this case applied the factors set forth in § 520 of the Restatement (Second) of Torts. It found that there was no "high degree of risk" nor "great likelihood" of harm resulting from Rooto's operations, and that the risk of harm to others (apart from Cavanaugh's criminal conduct) could be eliminated by the "exercise of reasonable care." It also found that Rooto's business operation, including storage of chemicals, was "quite common."
 
 
 13
 This court discussed Michigan's law on "inherently dangerous" or "extra-hazardous" activity in Kosters v. Seven-Up Co., 595 F.2d 347, 354 (6th Cir.1979), as covering "in the main, ... blasting, the collection of a quantity of water in a dangerous location [Smith v. Chippewa County Rd. Comm., 381 Mich. 363, 161 N.W.2d 561 (1968) ], storage of flammable liquids, and like activities." Kosters cited the Restatement (Second) of Torts § 520 "[f]or a listing of the factors to be weighed." Id. at 354.
 
 
 14
 E.H. Schoplen in his article, Landowner's Or Occupant's Liability In Damages For Escape, Without Negligence, Of Harmful Gases Or Fumes From Premises, 54 A.L.R.2d 764, 768 (1957 & Supp.1987), found only two cases in which liability had been considered in this area based on the theory of ultrahazardous activities. One was the California case, Luthringer, predicating strict liability on the escape of gases; the other, Fritz v. E.I. DuPont de Nemours & Co., 45 Del. 427, 75 A.2d 256 (1950), found against application of strict liability. The author concluded that "[w]hether the English doctrine of Rylands v. Fletcher is applicable in American courts is doubtful." 54 A.L.R.2d 768. Fritz rejected the Rylands doctrine and held that no strict liability existed against a business operator by reason of the escape of harmful gases from his premises. We deem Fritz to be the most closely analogous case to the facts in this controversy. See also Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728 (1948).
 
 
 15
 We are satisfied, upon a review of the facts and circumstances of this case and upon an application of the Restatement factors aforementioned, that the district court was not erroneous in concluding that Michigan law does not require that Rooto be held strictly liable for the gas emissions on June 14, 1987, under the ultrahazardous activity doctrine.
 
 
 16
 Accordingly, we AFFIRM the district court's grant of summary judgment for defendant; Avemco's claims are limited to those of negligence for Rooto's alleged pre-June 14, 1987 activity.
 
 
 
 [1]
 The notice of appeal lists only Avemco as the party appealing. Pursuant to Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and Minority Employees of Tenn. Dept. of Employment Security v. Tenn. Dept. of Employment Security, 901 F.2d 1327 (6th Cir.) (en banc), cert. denied sub nom., Davis v. Tenn. Dept. of Employment Security, Inc., --- U.S. ----, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990), Safeco is accordingly not before us on this appeal
 
 
 [2]
 The district court observed that Cavanaugh was later determined to be guilty as charged
 
 
 [3]
 The conversion count was later dismissed. The district court also dismissed defendant's claims of trespass, negligent hiring, and suspension, those claims having been based on "respondeat superior" and "ratification."
 
 
 [4]
 In a later part of the opinion, the district court characterized the risk as "limited."
 
 
 [5]
 At oral argument, however, Avemco conceded that Cavanaugh's criminal conduct was not foreseeable
 
 
 [6]
 Lack of causation can also bar claims based on strict liability. See Hawkins v. Evans Cooperage Co., Inc., 766 F.2d 904, 907 (5th Cir.1985) (defendant's acts must cause the harm)
 
 
 [7]
 In Rylands, the defendant's dam broke loose and the released water damaged a neighbor's property