Willie M. HAWKINS, Plaintiff,

v.

EVANS COOPERAGE CO.,
INC., Defendant,

and

OLIN CORPORATION,
Defendant-Appellee,

v.

MIDLAND INSURANCE COMPANY,
Defendant-Appellant.

No. 84–3403.

United States Court of Appeals,
Fifth Circuit.

July 29, 1985.

Longenecker & Musser, John H. Musser, IV, Geoffrey H. Longenecker, Carol A. Newman, New Orleans, La., for defendant-appellant.

Montgomery, Barnett & Brown, Wood Brown, III, New Orleans, La., for defendant-appellee.

Before WISDOM, GARWOOD, and DAVIS, Circuit Judges.

WISDOM, Circuit Judge:

Some years ago a truck driven by Willie Hawkins ran over a drum which had bounced out of another vehicle in front of Hawkins's truck. He was injured when he inhaled the fumes of a dangerous poison that leaked from the drum. He brought suit against the company transporting the drums, its insurer, and the manufacturer of the poisonous substance. The insurer settled with Hawkins, then sought contribution from the manufacturer. The district court granted the manufacturer's motion for a directed verdict dismissing the demand for contribution. We affirm.

## I.

Olin Chemical Corporation manufactures toluene diisocyanate (TDI), a hazardous substance used in the manufacture of polyurethane foam, used primarily to stuff chairs and other furniture. Olin entered into a contract with Evans Cooperage Company, a common carrier, to transport TDI in steel drums. The drums were manufactured by Evans according to instructions supplied by Olin and were labelled with a skull and cross bones using labels supplied by Olin.

Willie Hawkins was a truck driver employed by a company not a party to this suit. On November 14, 1980, he was rounding a corner of the Carrollton exit ramp of Interstate 10 in New Orleans when two drums containing TDI, which were not properly secured, fell off an Evans truck in front of him. Hawkins was unable to steer clear of the drums and ran over one of them. He crawled under his truck to check the damage and to dislodge the drum, which was leaking TDI. Hawkins did not see the warning label on the drum and inhaled the fumes of the TDI. He suffered injuries as a result of his exposure to the chemical.

Hawkins brought suit against Evans, Midland Insurance Company (Evans's insurer), Olin, and others. Midland settled with Hawkins for $325,000, of which $100,000 was paid by Evans under the terms of the insurance policy. Midland then sought contribution from Olin, contending that Olin was jointly responsible with Evans for the accident because of Olin's failure to use its expertise and knowledge as to the manner in which the TDI should be transported and labelled. At the close of Midland's presentation of evidence, the district court granted a motion for a directed verdict in favor of Olin. The court held that, because the transportation of the TDI was not an ultrahazardous activity under Louisiana law and because Olin had not authorized or controlled the method of transportation of the TDI, Olin was not liable for the negligence of its independent contractor, Evans. Midland appealed.

## II.

Uncontroverted testimony established that Evans was an independent contractor of Olin. Under Louisiana law, governing in this diversity case, the general rule is that a principal is not liable for the offenses of an independent contractor committed in the course of performing its duties under the contract. *See, e.g., Robideaux v. Hebert,* 1907, 118 La. 1089, 43 So. 887, 889; *Hyde v. Chevron U.S.A., Inc.,* 5 Cir.1983, 697 F.2d 614, 630. The rule is subject to two exceptions. First, if the work undertaken is an ultrahazardous activity, the principal cannot avoid liability for injuries resulting from the activity by letting out the work to an independent contractor. *See O'Neal v. International Paper Co.,* 5 Cir.1983, 715 F.2d 199, 201–02; *Ewell v. Petro Processors of Louisiana, Inc.,* La.Ct.App.1978, 364 So.2d 604, 606, *writ denied,* La.1979, 366 So.2d 575. Second, the principal may be liable for the acts of the independent contractor over which it has exercised operational control or which it has expressly or impliedly authorized. *See Wallace v. Oceaneering Int'l,* 5 Cir. 1984, 727 F.2d 427, 437; *McCormack v. Noble Drilling Corp.,* 5 Cir.1979, 608 F.2d 169, 174; *Touchstone v. G.B.Q. Corp.,* E.D. La.1984, 596 F.Supp. 805, 815; *Ewell v. Petro Processors of Louisiana, Inc.,* La. Ct.App.1978, 364 So.2d 604, 606–07, *writ denied,* La.1979, 366 So.2d 575.

Midland makes four arguments of sufficient weight to be considered on appeal. First, it argues that the transportation of TDI is an ultrahazardous activity, and Olin is therefore responsible for any injuries resulting from the activity. Second, it argues that Olin impliedly authorized the unsafe manner in which the drums of TDI were transported. Third, it argues that Olin had a duty to supply Evans with instructions concerning a safe manner of transport of the TDI, and its failure to supply such instructions makes it partly responsible for the accident. Finally, Midland argues that Olin was negligent in not

supplying larger labels to Evans that would completely encircle the drums.

■ Our review is governed by the well-established rule in the Fifth Circuit for directed verdicts. We must consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the non-moving party. If the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict, granting of a directed verdict is proper. *E.g., Gauthier v. Crosby Marine Serv.*, 5 Cir.1985, 752 F.2d 1085, 1088; *Boeing Co. v. Shipman,* 5 Cir.1969, 411 F.2d 365, 374 (en banc).

*A. Ultrahazardous Activity*

■ We recently gave an extensive analysis of the Louisiana doctrine of ultra-hazardous activities in *Perkins v. F.I.E. Corp.,* 5 Cir.1985, 762 F.2d 1250. Whether an activity qualifies as ultrahazardous under the Louisiana doctrine is a question of law. *Id.* at 1266. That doctrine is defined by three boundaries: (a) in the reported cases the activities classed as ultrahazardous all related to land or to other immovables; (b) the activity itself must cause the injury complained of and the defendant must have been engaged directly in the injury-producing activity; and (c) the activity must not require the substandard conduct of a third party to cause injury. *Id.* at 1267. We need not consider the first two of these elements in the present case, because we find that the transportation of TDI does not satisfy the third element. Louisiana law places in the ultrahazardous category activities that "can cause injury to others, even when conducted with the greatest prudence and care". *Kent v. Gulf States Utilities Co.,* La.1982, 418 So.2d 493, 498. The activity, therefore, must present "a risk of harm that cannot be eliminated through the exercise of due care". *O'Neal v. International Paper Co.,* 5 Cir.1983, 715 F.2d 199, 202. If the activity can be conducted without a high degree of risk of injury by exercising due care, it is not ultrahazardous. *See O'Neal v. International Paper Co.,* 5 Cir.1983, 715 F.2d 199, 202; *CNG Producing Co. v. Columbia Gulf Transmission,* 5 Cir.1983, 709 F.2d 959, 962.

■ The record establishes that TDI can be safely transported with the exercise of due care. Robert Vaughn, an expert in safety engineering, testified that TDI can be safely transported in tank cars (a closed system) and on trucks in drums, if the drums are properly braced on the vehicle. Vaughn testified that proper bracing consists of strapping the drums onto pallets, then bracing or strapping the pallets to the floor of the vehicle. Moreover, if an unenclosed truck is used, there should be side rails on the vehicle. In the instant case, there was uncontroverted testimony that the trucks Evans used to transport the TDI did not have side rails, but rather had only a four inch "lip" around the bed. It was, therefore, Evans's negligence in using improper trucks and bracing that rendered the transportation of the TDI unsafe, rather than some particular feature of TDI that produces a risk of harm in its transportation that cannot be eliminated. We conclude that the transportation of TDI was not an ultrahazardous activity.

*B. Exercise of Control*

Midland insists that Olin knew of the method of transportation Evans was using and impliedly authorized such method. The only evidence of such authorization that Midland points to in the record is the testimony of Alex Lewis, the director of personnel for Evans. Lewis was asked whether Olin had "occasion to send personnel down to examine or check on the operations at Evans". He replied in the affirmative. He was then asked, "[D]id [Olin personnel] check on all facets of the operation." He replied, "As far as I know, they did, sir." When asked whether Olin had given specific directions on how Evans was to transport the drums, Lewis replied that "[a]ny company that we dealt with in handling their chemicals, before we would touch those chemicals we would have to

have in writing from them specific directions as to how they were to be handled".

There was, however, overwhelming evidence that Olin never supplied instructions to Evans concerning the method of transport, nor was Olin aware of the method actually being used. Mildred Ordoyne, the office manager and treasurer of Evans, testified that Olin provided instructions to Evans on how the drums were to be manufactured and labelled, but not on how the drums were to be transported. She also testified that "when this accident happened, the feeling at Evans was that this was an Evans problem, not an Olin problem". Moreover, such written instructions as Olin did supply to Evans that were admitted into evidence contained no instructions concerning the method of transportation of the drums.

Ronald Gibson, who was the product distribution manager for the urethane and organics department of Olin at the time of the accident, testified that, although he visited Evans to meet the people there and view their operations, he did not see how the drums were being loaded onto Evans trucks. In particular, he stated that he was not aware whether Evans used sideboards on its trucks or secured the drums to the bed. He also testified that the written instructions given to Evans by Olin dealt with the *internal* storage and handling of the product, not its transportation. Robert McAree, a technical service representative for Olin, testified that he was familiar with the operations at the Evans plant, but knew nothing about how the product was actually being shipped. No other testimony of Olin employees who had been to the Evans plant was offered.

■ We conclude that reasonable persons could not differ in the conclusion that Olin had neither knowledge of, nor exercised control over, the method of shipment Evans used with the TDI drums. Lewis did not specifically testify that Olin checked out the method of shipment of the drums, but only that "as far as [he] knew", Olin checked on "all facets" of the Evans

operation. His testimony that Evans required as a company policy written instructions on how a shipper's chemicals "were to be handled" is not inconsistent with Gibson's testimony that Olin provided instructions concerning only the internal storage and handling of the product, and not its transportation. We therefore conclude that Midland offered no substantial evidence that Olin exercised control over, or impliedly authorized, the method of transportation of the TDI.

## C. The Duty to Supply Instructions Concerning Shipment; the Size of the Labels

■ Midland's remaining two contentions require little discussion. Midland argues that, in view of the hazardous nature of TDI, Olin had a duty to supply instructions to Evans concerning its safe shipment. This contention has no merit. When the activity at issue is not ultrahazardous, the principal has no duty to ensure, through instructions or supervision, that the independent contractor performs its obligations in a reasonably safe manner. *See Hyde v. Chevron U.S.A., Inc.*, 5 Cir.1983, 697 F.2d 614, 630; *McCormack v. Noble Drilling Corp.*, 5 Cir.1979, 608 F.2d 169, 175; *Kent v. Gulf States Utilities Co.*, La.1982, 418 So.2d 493, 500. Moreover, a principal who exercises no operational control has no duty to discover and remedy hazards created by acts of its independent contractors. *Wallace v. Oceaneering Int'l*, 5 Cir.1984, 727 F.2d 427, 437; *Touchstone v. G.B.Q. Corp.*, E.D.La.1984, 596 F.Supp. 805, 815. Olin was therefore under no duty either to provide advance written instructions to Evans concerning how the TDI should be transported or to check up on the method actually being used. Olin was entitled to rely on the expertise of its independent contractor, a common carrier with 20 years of experience in shipping hazardous substances of this nature.

■ Midland's final argument, that it was entitled to go to the jury on the issue whether the labels Olin provided to Evans were of sufficient size, is also of little

merit. Midland is correct that under Louisiana law a manufacturer has a duty to label appropriately a dangerous product to warn of any dangers that are known to be inherent in it and its use or that may arise from foreseeable improper handling or use of the product. *See, e.g., Bridges v. Chemrex Specialty Coatings, Inc.,* 5 Cir.1983, 704 F.2d 175, 179; *Andries v. General Motors Corp., Delco Batteries Div.,* La. 1983, 444 So.2d 1180, 1183; *Chappuis v. Sears Roebuck & Co.,* La.1978, 358 So.2d 926, 929. It is undisputed in the present case that Olin supplied labels to Evans that warned of the dangers of TDI, that Evans was contractually bound to affix these labels to the drums, that the labels complied with the relevant Department of Transportation regulations, and that Evans would not have accepted the labels if they did not so comply. Midland has pointed to no authority, and we have found none, to support the contention that more was required of Olin.

## III.

Because the transportation of TDI is not an ultrahazardous activity under Louisiana law, and because Olin neither exercised operational control over, nor impliedly authorized, the method of transportation used by Evans, Olin is not responsible for the negligent acts of its independent contractor. Olin had no duty to supply instructions for the safe shipment of the TDI to Evans, and Olin satisfied its duty to label its product with an adequate warning of its dangers. The directed verdict in favor of Olin is therefore AFFIRMED.