William Carey BOUY

v.

TRANSCONTINENTAL GAS PIPE LINE CORPORATION, et al.

Civ. A. No. 85–40–B.

United States District Court, M.D. Louisiana.

Sept. 25, 1986.

from pipeline rupture and ignition. LSA-C.C. art. 2315.1.

Robert H. Schmolke, Edmund J. Schmidt, III, Baton Rouge, La., for plaintiff.

G. William Jarman, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, La., for defendant.

POLOZOLA, District Judge.

This matter is before the Court on the motion of the defendants, Transcontinental Gas Pipe Line Corporation (Transco), and Aegis Insurance Service, Inc. (Aegis), for partial summary judgment. No oral argument is required on this motion.

William Carey Bouy brought this action seeking general, special and exemplary damages arising from injuries he sustained when a Transco natural gas pipeline ruptured and ignited.

Transco and Aegis have moved for partial summary judgment seeking to dismiss plaintiff's claim for exemplary damages under Louisiana Civil Code Article 2315.1. Defendants contend that natural gas, which was being transported in the Transco pipeline which ruptured, is not a "hazardous" substance within the contemplation of Article 2315.1 of the Louisiana Civil Code.

Article 2315.1 provides:

In addition to general and special damages, exemplary damages may be awarded if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances.

The Louisiana legislature did not define "hazardous or toxic substances" when it enacted Article 2315.1. The Court has also failed to find any jurisprudence which has decided the specific issue before the Court. Therefore, this Court must turn to other sources, including legislative history and related Louisiana jurisprudence, to determine the meaning of "hazardous or toxic substances" under Louisiana law.

The defendants cite several cases [1] which define "ultrahazardous activities" for which Louisiana law imposes absolute liability and concludes that the transmission of natural gas is not included in these cases. Therefore, defendants argue that there could be no liability for exemplary damages pursuant to Article 2315.1 for transmission of natural gas. However, defendants fail to make or note the distinction between a "hazardous substance" and an "ultrahazardous activity". An examination of *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904 (5th Cir.1985) reveals the flaw in defendants' argument.

In *Hawkins* the plaintiff, a truck driver, sued Olin Corp., the manufacturer of a poisonous chemical, toluene diisocyanate (TDI), and Evans Cooperage Co., the independent contractor who transported the chemical. At issue before the court was whether the transportation of TDI, a poisonous substance, was an "ultrahazardous activity", thus making the principal liable for the torts committed by its agent. The court determined that the *transportation* of TDI by tank car or truck was not an "ultrahazardous activity" under Louisiana law. While the transportation of TDI, a poisonous substance, is not an "ultrahazardous activity", it is clear that TDI would fall within the purview of Article 2315.1 as a hazardous or toxic substance.[2] Therefore, the fact that transportation of a substance may not be an "ultrahazardous ac-

tivity", does not necessarily mean that the substance is not hazardous under Article 2315.1.

An analysis of Article 2315.1 also reveals that the legislature chose not to use the term "ultrahazardous", which has been defined by Louisiana jurisprudence, but instead chose the term "hazardous". The Court must assume that the Louisiana legislature is aware of the interpretation placed on its laws by the courts. Therefore, the Court must reject defendants' analysis which equates the definition of "hazardous", as found in Article 2315.1, to that of "ultrahazardous" as found in the jurisprudence.

The defendant further argues that the legislative intent in enacting Article 2315.1 was to provide a remedy to individuals who are involved in a catastrophic scenario, which forces them and their families to flee "en masse" from their homes and is inapplicable to a case involving a single plaintiff. In response to defendant's argument, the plaintiff contends that the redactors sought to provide an incentive, through negative deterrence, to those members of the hazardous and toxic substance industry to provide and ensure a safe means of transporting those substances.[3]

In determining whether natural gas is a hazardous substance as used in Article 2315.1 the Court cannot base its decision solely on the number of people who may have been harmed by the defendant's ac-

---

1. *Kent v. Gulf States Utilities*, 418 So.2d 493 (La.1982); *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904 (5th Cir.1985); *Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir.1985); *CNG Producing Co. v. Columbia Gulf Transmission Corp.*, 709 F.2d 959 (5th Cir.1983).

2. This is made clear by the transcript of a hearing before the Louisiana House Committee on Civil Law and Procedure on House Bill Number 501, precursor to Civ.Code Art. 2315.1, wherein the following discussion occurred:

   By Rep. Jones:
   Would you folks agree that if this bill had in fact been law at the time of the Livingston derailment, that that was a suitable condition where exemplary damages should have been considered?
   By Mr. Cross:
   [U]nder this law it probably would have applied.

The "Livingston derailment" referred to in the above discussion involved the derailment of several railroad tank cars loaded with toxic chemicals in the town of Livingston, Louisiana.

3. Plaintiff relies on an excerpt of June 4, 1984 from House Committee on Civil Law and Procedure, Discussion on House Bill No. 501 (statement of Mr. Washofsky), which states:

   The issue isn't vindictiveness if you want to call it that, but it's deterrence. The whole history of exemplary damages is to deter conduct. And it's very simple that when an insurer or company can compute that costs less to pay for the injuries and debts of a (sic) litigation involved than to prepare (sic) the defect or correct the condition when mathematically, economically, they're better off.

tions or whether the accident involved is catastrophic in nature. The first issue to determine is whether Article 2315.1 will permit the court or jury to award exemplary damages if the "injuries were caused by the defendant's wanton or reckless disregard for the public safety in the storage, handling, or transportation of hazardous substances". If the answer is yes, then the court or jury may decide whether the facts of the particular case justify the imposition of exemplary damages. At that time the trier of fact may consider whether there is a catastrophe or any other fact which supports or negates the imposition of exemplary damages.

There is extensive jurisprudence setting forth the standard of care imposed on natural gas carriers. The Louisiana Supreme Court in *Raphael Brothers v. Cerophyl Laboratories*, 211 La. 354, 30 So.2d 116 (1947) adopted the trial court's holding that:

> Natural gas, because of its highly inflamable and explosive character, is an inherently dangerous instrumentality. Those who handle and distribute it are charged with the duty to exercise that degree of care commensurate with its dangerous character and necessary to protect the public from any foreseeable injury therefrom.

30 So.2d at 118.

This language has been quoted and cited with approval in numerous subsequent cases.[4]

The Fifth Circuit Court of Appeals has also adopted a similar rule in *Winans v. Rockwell International Corp.*, 705 F.2d 1449 (5th Cir.1983) wherein the Court stated:

> Louisiana law does hold "to an extraordinary duty of care" those who "deal in or handle dangerous substances or agencies such as explosives, electricity, gas, firearms, combustibles and fireworks".

705 F.2d at 1454 (footnote omitted).

In summary, courts have held natural gas to be a "dangerous" substance under Louisiana law which warrants a higher degree of care when handling it. This Court finds this jurisprudence applicable and persuasive in interpreting the meaning of "hazardous" as found in Article 2315.1.

■ Considering the legislative history on Article 2315.1 and the jurisprudence, this Court concludes that natural gas is a "hazardous ... substance" within the meaning of Article 2315.1 of the Louisiana Civil Code.

■ The Court further finds that there are material issues of fact in dispute with regard to whether or not Transco's transmission of natural gas was done with wanton or reckless disregard for public safety. Because there are material issues of fact in dispute, the Court finds that defendants' motion for summary judgment must be denied.

Therefore:

IT IS ORDERED that the motion of the defendants, Transcontinental Gas Pipe Line Corporation and Aegis Insurance Service, Inc., for partial summary judgment be and it is hereby DENIED.

**4.** *Wiggins v. Arkansas Louisiana Gas Company*, 441 So.2d 803 (La.App. 2d Cir.1983); *Kalmn, Inc. v. Empiregas Corp.*, 406 So.2d 276 (La.App. 3rd Cir.1981); *Reggio v. Louisiana Gas Service Company*, 333 So.2d 395 (La.App. 4th Cir.1976), writ denied 337 So.2d 526.